**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Jessica Weitgenant,

       Plaintiff,

  v.

Janet Kay Patten; Jane Does;
Christopher Sorenson; Lincoln, Lyon,
and Murray Human Services; and Southwest Health
and Human Services,

       Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 14-255 ADM/FLN

_____

Daniel J. Bellig, Esq., Farrish Johnson Law Office, Mankato, MN, on behalf of Plaintiff.

Ann Goering, Esq., Ratwik Roszak & Maloney, PA, Minneapolis, MN, on behalf of Defendants Southwest Health and Human Services and Christopher Sorenson.

_____

## I. INTRODUCTION

On August 28, 2014 the undersigned United States District Judge heard oral argument on Defendants Southwest Health and Human Services ("SWHHS") and Christopher Sorenson's ("Sorenson") Motion for Judgment on the Pleadings [Docket No. 18]. SWHHS and Sorenson argue that they are not liable for the violations of the Drivers Privacy Protection Act ("DPPA") and the Minnesota Government Data Practices Act ("MGDPA") alleged by Plaintiff Jessica Weitgenant's ("Weitgenant"). For the reasons discussed below, SWHHS and Sorenson's motion is granted in part and denied in part.

## II. BACKGROUND

Weitgenant alleges that Defendant Janet Kay Patten's "snoopy curiosity" led her to unlawfully look up Weitgenant's personal information in violation of the DPPA and the

MGDPA.  Pl.'s Mem. Opp. J. Pleadings [Docket No. 24] 1.  Patten was an employee of Lincoln, Lyon and Murray Human Services ("LLMHS") when she allegedly accessed Weitgenant's personal information.  LLMHS was dissolved in 2010.  In 2011, Pipestone County joined the LLMHS counties (Lincoln, Lyon and Murray) to form SWHHS.  Rock and Redwood counties later joined SWHHS in 2012 and 2013, respectively.  Weitgenant argues that SWHHS is liable for Patten's actions under a theory of successor liability.  Id. at 2.  Weitgenant also argues that the former director of LLMHS, Christopher Sorenson—who currently serves as the director of SWHHS—is liable for Patten's actions as the "responsible authority" for driver's vehicle services (DVS) data at LLMHS.

**A. The Parties**

LLMHS was formed by Lincoln, Lyon and Murray counties in 1974 as a joint powers entity under Minn. Stat. § 471.59.[1]  The purpose of LLMHS was to "form a single welfare board," a goal shared by Lincoln, Lyon and Murray counties.  Goering Aff. [Docket No. 21] Ex. 1.  The contract agreement among the three counties set forth the composition of the single Welfare Board and designated financing ratios based on the respective welfare expenditures of each county.  Id.  No other operational details were included in the agreement.  Id.

As early as 2006, prompted by a cost-benefit analysis, the LLMHS counties began discussing the formation of a new joint powers entity with a related social service organization and additional counties.  Goering Aff., Ex.6; Bellig Aff. [Docket No. 25] Ex. 2.  By January 2011, a new joint powers entity, SWHHS, was formed.  Id.  In total, SWHHS is comprised of

---

[1] LLMHS was originally called "the Region 8 North Welfare Board."  Defs.' Mem. Supp. J. Pleadings [Docket No. 20] 3; see also Goering Aff. [Docket No. 21] Ex. 1.  The Region 8 North Welfare Board changed its name to LLMHS in 1999.

the original three LLMHS counties in addition to Pipestone, Rock and Redwood counties. Id.[2]

Weitgenant is a resident of Rochester, located in Olmsted County, Minnesota. Compl. [Docket No. 1] ¶ 3. Patten is a resident of Worthington, located in Nobles County, Minnesota. Id. at ¶ 4. Weitgenant has some association with Patten's children. Id. at ¶ 40. Patten allegedly looked up Weitgenant's personal information through Minnesota's Motor Vehicle's (DMV) database on or about April 2, 2010 without a permissible purpose as required by the DPPA. Id. at ¶¶ 41- 44. Patten was employed by LLMHS at the time she allegedly accessed Weitgenant's personal information; she never worked for SWHHS.

Christopher Sorensen formerly served as director of LLMHS and now serves as the director of SWHHS. Goering Aff., Ex.6; Bellig Aff., Ex. 2.

**B. Minnesota's drivers' motor vehicle (DMV) records database**

The Driver and Vehicle Services Division of the Minnesota Department of Public Safety ("DPS") maintains a password protected database of Minnesota drivers' motor vehicle records ("DVS database"). The database includes each licensed driver's name, date of birth, driver's license number, address, photograph, weight, height, eye color, social security number, and some limited health and disability information. Compl. at ¶¶ 35 - 37. Law enforcement personnel and other state agency employees have access to the DVS database through a DVS website or a system operated by the Bureau of Criminal Apprehension. Each state employee who is authorized access is issued a password allowing entry to the DVS

---

[2] SWHHS's website indicates that it provides a wide range of social services, including financial assistance determinations, child support, public health and additional social services for mental health, adoption, chemical health, developmental disabilities and more. See SOUTHWEST HEALTH & HUMAN SERVICES, http://www.swmhhs.com/about-us/ (last visited October 24, 2014).

database.

**C. The DPPA and the MGDPA**

The DPPA prohibits "any person" from "knowingly . . . obtain[ing] or disclos[ing] personal information, from a motor vehicle record, for any use not permitted under Section 2721(b) of this title." 18 U.S.C. § 2722. As defined by the Act, "personal information" means basic identification information including name, photograph, address, social security number, and driver's license number. See id. § 2725(3). The Act lists numerous permitted uses, including "use by any government agency, including any court or law enforcement agency, in carrying out its functions . . . ." Id. § 2721(b)(1).

The MGDPA regulates the state's creation, collection, storage, maintenance, and dissemination of data and the public's access to it, including sensitive personal information. See Minn. Stat. §§ 13.01-13.99.

### III. DISCUSSION

**A. Motion for Judgment on the Pleadings Standard**

In considering a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, the court views "all facts pleaded by the nonmoving party as true and grants all reasonable inferences in favor of that party." Poehl v. Countrywide Home Loans, Inc., 528 F.3d 1093, 1096 (8th Cir. 2008). Judgment on the pleadings is appropriate "where no material issue of fact remains to be resolved and the movant is entitled to judgment as a matter of law." Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002). This is the same standard used to resolve a motion to dismiss under Rule 12(b)(6). Ashley Cnty., Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009).

**B. Liability of SWHHS**

SWHHS argues that no legal authority supports Weitgenant's conclusion that SWHHS should be held liable as the successor or the alter ego of LLMHS. Defs.' Mem. Supp. J. Pleadings at 7. Weitgenant contends United States Supreme Court precedent establishes that when one government entity merges into another, it is presumed that the new entity assumes the liabilities of the previous entity, unless the legislature specifically indicates otherwise. Pl.'s Mem. Opp. J. Pleadings at 8.

**1. The Joint Powers Act**

LLMHS and SWHHS are entities created under Minnesota's Joint Powers Act ("Act") to more efficiently provide social services to residents of their member counties. The Act provides that:

> Two or more governmental units, by agreement entered into through action of their governing bodies, may jointly or cooperatively exercise any power common to the contracting parties or any similar powers, including those which are the same except for the territorial limits within which they may be exercised.

Minn. Stat. § 471.59, Subd. 1 (2013). A joint powers organization can "exercise any power common to the contracting parties" and the group's power is "determined with reference to the powers possessed by the individual participants . . . ." Joint Indep. Sch. Dist. No. 287 v. City of Brooklyn Park, 256 N.W. 2d 512, 515 (Minn. 1977).

The nature of joint powers entities was discussed by the Minnesota Supreme Court in In re Greater Morrison Sanitary Landfill, SW-15:

> It is not clear whether a separate legal entity is created when governmental units act pursuant to the Joint Exercise of Powers Act. Neither is it clear, if an entity indeed is created, whether that entity has the attributes of a corporation or partnership, or is simply an agent acting on behalf of the principal member governmental units. . . . We believe that the entity, if any, created through the joint exercise of powers is in the

5

> nature of a hybrid, potentially possessing attributes of all the aforementioned legal relationships. The precise nature of any one such entity, however, must be determined on a case by case basis upon a thorough analysis of the purpose for and the responsibilities of the entity.

435 N.W. 2d 92, 96 (Minn. 1989). Addressing the issue of liability, the Act specifies that governmental units that participate in a joint powers entity are not individually liable for the acts or omissions of other participating government units unless expressly agreed to in writing. Minn. Stat. § 471.59, Subd. 1a (a) (2013). Further, when determining total liability, participating governmental units and the joint board "are considered a single governmental unit and the total liability . . . shall not exceed the limits on governmental liability for a single governmental unit as specified in section 3.736 or 466.04, subdivision 1. . . ." Id. at (b).[3]

### 2. Successor Liability and the Broughton rule

The Act does not address the question of successor liability. The parties cite to no binding case law on the question of successor liability among joint powers entities and the Court has identified none.

Weitgenant contends, however, that Broughton v. Pensacola and its progeny provide the "universal, well-established, black letter principles of government entity successor liability" that apply to this case. Pl.'s Mem. Opp. J. Pleadings at 8. Broughton, decided by the United States

---

[3] In 2005, the Eighth Circuit held that where a School Board and a City entered a joint powers agreement to maintain and run a community pool, both were liable in a personal injury suit under separate statutory liability caps. Reimer v. City of Crookston, 412 F.3d 673, 680 (8th Cir. 2005) ("The Joint Board itself is not entitled to recognition as a limited liability entity and . . . the Reimers should be able to demand two statutory liability caps (one from each 'partner' or 'principal'")). Subsection 1a (a) of Minn. Stat. § 471.59, which was added in 2006, reverses the effect of Reimer's holding. In 2008, the Eighth Circuit reviewed Reimer's holding, but did not rely on it in City of Geneseo v. Utils. Plus. 533 F.3d 608, 614 (8th Cir. 2008). Geneseo does not acknowledge the 2006 subsection 1a (a) amendment to Minn. Stat. § 471.59.

Supreme Court in 1876, held that the modification of municipal boundaries did not alter the City of Pensacola's liability for bonds previously issued. Broughton v. Pensacola, 93 U.S. 266, 266-71 (1876). The Court held:

> When, therefore, a new form is given to an old municipal corporation, or such a corporation is reorganized under a new charter, taking in its new organization the place of the old one, embracing substantially the same corporators and the same territory, it will be presumed that the legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter, and different officers administer its affairs; and, in the absence of express provision for their payment otherwise, it will also be presumed in such case that the legislature intended that the liabilities as well as the rights of property of the corporation in its old form should accompany the corporation in its reorganization.

Id. at 269. Weitgenant maintains that Broughton applies here because LLMHS reorganized itself into SWHHS and includes the same original three counties, serves some of the same constituents and fulfills the same purpose. Pl.'s Mem. Opp. J. Pleadings at 9.

Defendants argue that Broughton is inapposite because joint powers entities are distinct from traditional municipalities addressed in the cases that have applied the Broughton rule. As noted by Defendants, joint powers entities are created by municipalities, but are not municipalities themselves. To this end, joint powers entities do not have "territory" like counties, cities and school districts; nor do they have taxing authority. Each case cited by Plaintiff, Defendants contend, involves actual taking of physical property that is taxable, absent consideration. In sum, Defendants argue that the Broughton rule does not apply to the facts of this case because "[t]he basic thrust of Broughton is that equity demands that an entity receiving the benefits following an annexation or merger must also assume the liabilities." Defs.' Mem. Supp. J. Pleadings at 5, Citing Nat. Foundry & Pipe Works v. Oconto City Water-Supply Co., 81 N.W. 125 (Wis. 1899) (holding that Broughton is a "rule of equity to prevent fraud . . . where all

7

the property of one corporation is transferred to another without consideration . . . the presumption arises either that it was the intention of the parties that the successor corporation would assume the payment of the debts . . . or that the transaction was a fraud upon creditors and voidable to them.").

### 3. SWHHS is not the successor of LLMHS

Defendants' argument is persuasive. SWHHS is not the successor of LLMHS under the Broughton rule for three reasons. First, both LLMHS and SWHHS are joint powers entities born from a contractual agreement among counties, as specifically permitted by the Act. It is true that SWHHS occupies the same physical office space as LLMHS did and SWHHS employs many former LLMHS workers. However, SWHHS acquired no physical territory from LLMHS and all surplus funds from LLMHS were returned to its member counties when LLMHS was dissolved. See Pl.'s Mem. Opp. J. Pleadings at 6.[4] The counties that made up LLMHS then joined Pipestone, Rock and Redwood counties to form SWHHS.[5] Crucially, unlike Broughton and its progeny, SWHHS did not acquire any assets directly from LLMHS absent consideration; rather, the counties that formed SWHHS contributed the necessary assets to establish SWHHS. See Compl. ¶ 21.[6]

---

[4] To the extent any capital assets were transferred to SWHHS from LLMHS, those assets were controlled by the member counties and thus any such transfer cannot be considered a direct transfer of assets from LLMHS to SWHHS absent consideration.

[5] Pipestone, Lincoln, Lyon and Murray Counties formed SWHHS in 2011. Rock County and Redwood County joined in 2012 and 2013, respectively.

[6] Weitgenant highlights that in 2011, the Commissioner of the State of Minnesota Bureau of Mediation Services (BMS) found SWHHS to be the successor public employer of LLMHS under a labor relations analysis pursuant to Minn. Stat. § 179A.03. See Goering Aff., Ex. 6. Notably, the BMS's analysis is entirely distinct from the question of whether SWHHS should be LLMHS's successor in liability for the acts of an employee who worked only for LLMHS, not

Second, LLMHS solely provided public services; it did not issue bonds or otherwise acquire debts owed to private persons. This is significantly different from Broughton where the City of Pensacola utilized its taxing authority to issue bonds to fund the construction of a railroad. Broughton, 93 U.S. at 266. Florida's 1868 Constitution called for the reorganization of municipalities. Id. Thereafter, when bond holders sought to collect money owed from Pensacola, the city argued that as a new, separate, and distinct entity, it was no longer liable for previous debts. Id. at 268. The United States Supreme Court disagreed. "[The constitution] contemplated no change in existing liabilities." Id. Under these circumstances, the principle that "[w]here an existing corporation is dissolved and its territory annexed to another corporation, the latter succeeds to the obligations as well as to the property of the dissolved corporation" makes perfect sense because otherwise debts and other liabilities would go unmet. See George D. Barnard & Co. v. Bd. of Comm'rs of Polk Co., 98 Minn. 289, 291 (Minn. 1906).

The nature of Weitgenant's claims—based on alleged unlawful acts committed by Patten, an LLMHS employee, in violation of federal and state law—are wholly distinguishable. Patten never worked for SWHHS. The counties that participated in LLMHS remain functional government units, to which liability may attach for claims that arose during LLMHS's existence. For example, in Greater Morrison Landfill, the Minnesota Supreme Court held that cities and townships ("relators") that created a joint powers organization to manage a solid waste landfill ("Landfill Board") were jointly and severally responsible for liabilities incurred while the landfill was operational. 435 N.W. 2d at 97 ("If the Landfill Board is merely an agent, relators' liability,

---

SWHHS. The temporary injunction against SWHHS arising out of a labor dispute is similarly distinguishable. See Pl.'s Mem. Opp. J. Pleadings at 7.

as principals, cannot be disputed. If there is a partnership, then relators are individually liable for all debts and obligations incurred prior to dissolution."); see also Reimer v. City of Crookston, 412 F.3d 673, 680 (8th Cir. 2005) (holding that the joint powers entity at issue was not entitled to the legal protection afforded to limited liability entities and concluded that the City and School Board that formed the joint power entity were both liable).[7] Thus, there is no persuasive reason, as a matter of law or public policy to hold SWHHS liable for alleged unlawful acts committed by Patten.

Finally, Defendants have not suggested, and there is no record that Lincoln, Lyon and Murray Counties dissolved LLMHS to avoid outstanding liabilities. It appears undisputed that the member counties dissolved LLMHS and were motivated to form SWHHS to more efficiently and effectively serve the residents of the member counties. For all of these reasons, Broughton is not applicable to the joint powers entity at issue in this case and Weitgenant's DPPA and MGDPA claims alleged against SWHHS fail as a matter of law.

### C. Liability of Christopher Sorenson as director of LLMHS

Sorenson argues that he is not liable in his official capacity as the former director of LLMHS for any alleged unlawful look-ups by Patten because he was not the "responsible authority" for DVS data. Weitgenant maintains that Sorenson qualifies as the responsible authority of LLMHS because county welfare agency directors are identified as responsible authorities by statute.

---

[7] Weitgenant named LLMHS as a defendant, but the summons was returned unexecuted because "Christopher Sorenson told server he would not [accept] papers because [LLMHS] no longer exists." Summons [Docket Nos. 3 and 4]. Weitgenant did not name Lincoln, Lyon and Murray Counties as defendants.

At the time of Patten's alleged unlawful look ups, the MGDPA required "responsible authorities" to "(1) establish procedures to assure that all data on individuals is accurate, complete, and current for the purposes for which it was collected; and (2) establish appropriate security safeguards for all records containing data on individuals." Minn. Stat. § 13.05, subd. 5(a) (2010). The MGDPA identifies responsible authorities for protected data in state and local welfare systems, as follows:

> Notwithstanding any other provision of this chapter to the contrary, the responsible authority for each component of the welfare system listed in subdivision 1, clause (c), shall be as follows:
>
> (1) the responsible authority for the Department of Human Services, state hospitals, and nursing homes is the commissioner of the Department of Human Services;
>
> (2) the responsible authority of a county welfare agency is the director of the county welfare agency;
>
> (3) the responsible authority for a local social services agency, human services board, or community mental health center board is the chair of the board;
>
> (4) the responsible authority of any person, agency, institution, organization, or other entity under contract to any of the components of the welfare system listed in subdivision 1, clause (c), is the person specified in the contract;[8] and
>
> (5) the responsible authority of the public authority for child support enforcement is the head of the public authority for child support enforcement.

Minn. Stat. § 13.46, subd. 10(a). Weitgenant argues that Sorenson should thus be considered the

---

[8] The "welfare system," by definition, includes [t]he Department of Human Services, local social services agencies, county welfare agencies, private licensing agencies, the public authority responsible for child support enforcement, human services boards, community mental health center boards, state hospitals, state nursing homes, the ombudsman for mental health and developmental disabilities, and persons, agencies, institutions, organizations, and other entities under contract to any of the above agencies to the extent specified in the contract. Minn. Stat. § 13.46, subd. 1(c).

11

responsible authority because LLMHS was a multi-county welfare agency and also the public authority responsible for child support enforcement. Notably, the 1974 resolution that formed the Region 8 North Welfare Board is titled "Agreement for Multi-County Welfare Agency." Goering Aff., Ex. 1. However, in 1999 the Region 8 North Welfare Board changed its name to "Lincoln, Lyon and Murray Human Services." Sorenson notes that in Weitgenant's Complaint, she identifies LLMHS as a "local social services agency" which supports the conclusion that the responsible authority is LLMHS's board chair. Compl. ¶ 7.

Based on the record before the Court, it appears that LLMHS provided all welfare and social services to its member counties. Indeed, the duties of a local social service organization, as defined by statute, include the operation of numerous welfare programs. See Minn. Ch. 393.07 (2010). Thus, both Sorenson and the LLMHS board chair appear to qualify as LLMHS's responsible authority for the purpose of MGDPA liability.[9] Sorenson will remain a Defendant in his official capacity as the former director of LLMHS.[10]

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants Southwest Health and Human Services and Christopher Sorenson's Motion for

---

[9] The Court expressly disagrees with Sorenson's argument that only Ramona Dohman, the DPS Commissioner, should be considered the "responsible authority" for DVS data. Defs.' Mem. Supp. J. Pleadings at 24. The plain language of Minn. Stat. § 13.46, subd. 10(a) identifies responsible authorities within the welfare system, and their duties extend to the collection, maintenance, use and dissemination of DVS data. See Minn. Stat. § 13.46, subd. 2(a).

[10] Weitgenant suggests the Court should order amendment of the pleadings to name the appropriate responsible authority pursuant to Rules 17 and 25 of the Federal Rules of Civil Procedure. Pl.'s Mem. Opp. J. Pleadings at 34. The Court declines to order automatic substitution as Plaintiff may seek leave to amend her Complaint.

Judgment on the Pleadings [Docket No. 18] is **GRANTED IN PART and DENIED IN PART**, as follows:

1. To the extent Southwest Health and Human Services seeks judgment on the pleadings, the motion is **GRANTED** and Southwest Health and Human Services is dismissed as a Defendant in this action; and

2. To the extend Christopher Sorenson seeks to be dismissed from this case in his official capacity as the former director of LLMHS, the motion is **DENIED**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: October 30, 2014.

13